LAND, J.
This is a suit for damages for personal injuries sustained by Chas. B. Berry, the minor son of the plaintiff, while working in the mill of the defendant. Chas. B. Berry, on coming of full age, was substituted as plaintiff.
The petition alleges, in substance, that C. B. Berry, then 19 years old, was on May 6, 1907, in the employ of the defendant as extra man; that among his other duties was that of oiling the edger machine, and that, while passing from one end of the machine to the other, his jumper coat was caught by the feed roller of the edger, and his body dragged into the machine between the rollers, injuring his head and face, fracturing his skull, breaking his jawbone, and otherwise severely injuring him; that in oiling said machine the said Berry passed through an open space, about 18 inches wide, between the edger table and the edger machine; that he had practically no experience in working in sawmills; that he had been working for defendant in minor capacities for about two months; that he had no experience with the operation of an edger machine; and that he was not warned of the dangers of the same, and as to the danger of oiling said machine; that the accident and injuries to the said Berry was due entirely to the negligence of the defendant in operating said machine, and requiring him to oil the same while running, while leaving said space open for passage, without warning or informing him of the danger incident to said passage and of the work to which he was assigned; that it was negligence to operate said machine while said passage was open; that it was negligence not to place a warning sign thereat to prevent employés from passing through the opening; that it was negligence in not barring up the passage so as to prevent its use by employés; and that all of this negligence caused or contributed to the accident and injuries to the said O. B. Berry.
The answer of the defendant is an exception of no cause of action, followed by a general denial, and an averment that the injuries sustained by Chas. B. Berry were due to his own gross carelessness and negligence and not through any fault or negligence of the defendant.
The cause was tried before the judge, who rendered a judgment in favor of the plaintiff for the sum of $2,000.
Charles B. Berry had been previously employed in several other mills as a carriage rider. He applied for the same job in defendant’s mill, but the position being already filled, was hired to work on the log deck. On March 18, 1907, Berry was ordered to do the work of an extra man, including the oiling of the edger machine. No instructions or warnings were given to him by the foreman. In doing the work of oiler, he used the narrow space, 15% inches in width, between the edger machine and the edger table for the purpose of reaching the other side of the machine. On May 6, 1907, while attempting to pass through this narrow space, while the machinery was in operation, Berry’s jumper was caught in the rollers of the edger, and he was dragged, head foremost, against the machine between the rollers, and his skull was fractured.
As already stated Berry’s previous experience in sawmills had been confined to riding the log carriage. The foreman testified that he was so informed when he employed Berry, but did not consider it necessary at that, or any other time, to warn Berry not to use the narrow passage. The contention of the defendant that it was necessary to leave an open space between the edger tables, for the removing of waste cuttings of the machine, is refuted by the fact tnat in many mills no space whatever is left for the purpose. The further contention that such space is never left for the purpose of passage is refuted by the testimony of two experienced sawmill managers. Mr. Ball testified that it is best for such passage *691 way to be from 2% to 3 feet in width for the purpose of making edger easy to oil and to keep clear of trash accumulating. Both of these witnesses testified that the edger was a very dangerous machine, and that inexperienced men should never be employed about such a machine. Mr. Corey did not think that roller teeth added anything to the danger, unless so exposed as to allow the clothing of the oiler to get caught.
In the case at bar the open space between the edger tables was only 15% inches in width, thus rendering passage through such space extremely dangerous.
The only real defense" in the case is that the danger was obvious and apparent to any person of ordinary intelligence. Such was the opinion of several witnesses, but this is a question for the jury or the court to determine on the facts and circumstances of the ease. Our learned Brother below evidently found from the evidence that the danger was not apparent and obvious to Berry. The question is whether Berry, a young and inexperienced employs, should have known and' appreciated the danger of using the passage. Berry knew that Irwin, his immediate predecessor, and others, had used the open space as a passageway. Berry himself used the open space for the same purpose until he was injured. In so doing it seems to us that Berry acted as any other employs, of his age and experience, would have done under similar circumstances. The foreman knew that other employSs had used this dangerous passageway, and warned them after the fact. He, however, with this knowledge, did not consider it necessary to warn Berry m advance.
Defendant contends that Berry was warned by two fellow servants of the danger of using the open space in question as a passageway. In this and other connections defendant quotes ex parte affidavits signed by employés of the mill. Of course, such affidavits are not evidence against the plaintiff, and were admissible solely for the purpose of impeaching the credibility of the affiants as witnesses. One, Horn, in his affidavit stated that he had told Berry that he had better quit going through there, he would get killed. In his testimony, Horn said:
“It seems that I did, but I don’t remember just now whether I did positively, or not. I may have at different places.”
This answer is too vague and indefinite to make proof of any specific warning as to the use of the open space in question. The witness, Hudson, an assistant filer, testified that he had seen Berry pass through this space prior to the accident, and had told him, several times, to the best of his recollection, that it was dangerous and he was liable to get killed. The witness mentioned one occasion when Berry went through there with a saw in each hand, while the machinery was still in motion, and he spoke to him as follows:
“I told him that I didn’t want him to go through there any more. I did not care for him getting bunged, but I did not want my saws torn up.”
The witness stated in the same connection that he did not think that Berry made any reply. On cross-examination the same witness stated that he warned Berry because he “didn’t want him to get the saws torn up by being caught in there,” and finally admitted that what he said to Berry was “in a laughing and joking way.” It is not at all certain that Berry heard what Hudson said on that occasion. In the course of his cross-examination, Berry stated that he did not know whether or not Hudson made such a statement ; that he did not remember it. We do not think that Hudson’s casual remarks, even if they had been heard by Berry, would have conveyed any definite or serious warning to him. A warning in general terms is not equivalent to the reasonable instructions and cautions regarding the danger of his employment that a young or inexperienced servant *693 is entitled to from Ms master. 26 Oye. Í219. It is not the province of fellow servants to give such instructions. In the ease at bar, there was the obvious danger that a servant walking through the open space might be struck by the planks that were continually passing from the machine to the edger table. There was also the less apparent danger that the clothing of the servant might be caught by the slightly projecting teeth of the upper roller. [1] There is no evidence to show that Berry received from any one any specific instructions and cautions as to the latter peril. There is a great deal of opinion evidence in the record as to whether the open space in question was intended for a passageway. Whether so intended or not, it was used as a passageway by Berry and all the oilers who preceded him to the knowledge of the foreman of defendant. There is no evidence that such employés ever used any other passageway to reach the opposite side of the edger machine. The defendant was negligent in not barring this dangerous and unusually narrow passageway, and in not giving reasonable instructions and caution to Berry regarding the dangers of using the same in the course of his employment. Berry was both young and inexperienced in the particular work of oiling the edger. He testified that he did not know the danger lurking in the slightly exposed teeth of the roller. Irwin, the immediate predecessor of Berry, testified that for four or five months he had used the same passageway; that he was never warned not to use it; and that he never knew that there was any special danger in so doing, until after the accident to Berry.
“Where a servant by reason of his youth or inexperience is not acquainted with the dangers incident to his employment, he does not assume the risk thereof until the master apprises him of the danger. Mere knowledge of a defect without appreciation of the danger is not enough to charge him with the assumption of risk; but his youth or inexperience will not excuse him, if he does, or ought to, know and appreciate the danger to which he is exposed.” 26 Cyc. 1221-2. See, also, James v. Lumber Co., 50 La. Ann. 717, 23 South. 469, 44 L. R. A. 33.
It is evident .that if defendant’s foreman bad duly appreciated the dangers of the employment, be would bave properly instructed and cautioned Berry as to sucb dangers so as to enable bim to avoid them. [2, 3] After a careful consideration of tbe evidence we are not prepared to say that our learned Brother below erred in his appreciation of tbe evidence as to the negligence of tbe defendant, and tbe absence of negligence on tbe part of the plaintiff.
Judgment affirmed.